# Richmond

HENRY LEE JOHNSON v. COMMONWEALTH OF VIRGINIA.

November 21, 1949.

Record No. 3579.

Present, All the Justices.

The opinion states the case.

*W. E. Neblett*, for the plaintiff in error.

*J. Lindsay Almond, Jr., Attorney General* and *H. T. Williams, Jr., Junior Attorney*, for the Commonwealth.

STAPLES, J., delivered the opinion of the court.

In a trial before a jury on an indictment which charged that Henry Lee Johnson, the defendant (plaintiff in error) "feloniously did kill and murder one Fletcher Watson", he was found quilty of voluntary manslaughter and sentenced to serve five years in the State penitentiary. He seeks a reversal here on two grounds:

First, that the circuit court erred in overruling his motion to set aside the verdict of the jury as contrary to the law and the evidence and without evidence to support it; and

Second, that the court erred in giving, over his objections, certain instructions to the jury.

Viewing the evidence in the light of the jury's verdict the following facts are clearly established:

The decedent, Fletcher Watkins, and his wife, May Bell

Watkins, had been having frequent quarrels due to the fact that Mamie Coleman, the estranged wife of May Bell's brother, had been living in the home several months over May Bell's protests. Several days before the occasion here involved while the deceased was drinking, he had run his wife, May Bell, away from home with a shot gun, but as soon as he sobered up he went after her and brought her back home.

The defendant and his wife, who is a first cousin of May Bell, spent the night of October 30, 1948, in the home of the deceased. The next day, which was a Sunday, the deceased and the defendant both appeared to have been drinking, and about midday the deceased ordered his wife, May Bell, to take her children and "get out of here". She then took the children to the home of a neighbor, Mrs. A. L. Barker. A short time after they left home the deceased got his shot gun, loaded it and stated that he was going to kill his wife. He then left with the shot gun and walked across a field in the direction of the Barker home where his wife and children had gone.

While the defendant did not testify at the trial, the witness, Leonard Moore, who had also spent Saturday night in the defendant's home, stated that the defendant said to him, "go with me and we'll go talk to Fletcher" (the deceased). Mamie Coleman also testified that the defendant said he would go and stop the deceased and take the gun away from him to prevent him from shooting his wife; that he and Leonard Moore then left in the automobile to overtake the deceased for that purpose. Leonard Moore testified that when they got in the field the defendant stopped the car and that the deceased "turned around and told us; 'if you come any further I'll kill both of you.' Henry (the defendant) grabbed him and I started back to the car." The last time this witness saw the shot gun was when defendant grabbed the deceased. He did not see anything more until he heard the shot "and I turned around and Fletcher was falling." "Henry Lee I guess shot him. He said he did."

The defendant contends that his shooting of the deceased was a justifiable homicide. He thus states his position:

"The undisputed facts are, that at the time of the homicide, the accused was attempting to prevent the deceased from committing a felony upon his wife and children, in this: That the accused and Leonard Moore on approaching the deceased in a field, the deceased made an attack upon them with a shot gun, threatening to kill them, the accused grabbed the deceased, a scuffle ensued and the shooting occurred almost instantly."

■ We do not think this position is supported by the evidence. There is uncontradicted credible testimony of several witnesses that the defendant grabbed the deceased before he was able to shoot the shot gun; in fact, that he knocked the gun out of deceased's hands, unloaded it, and threw the shell a distance of about twelve feet from where the gun was found lying on the ground; and that all this occurred before the defendant shot deceased with the pistol. This testimony, if believed by the jury, completely eliminated any necessity for the defendant to shoot the deceased, either in self-defense, or to prevent the deceased from killing his wife. The verdict of voluntary manslaughter indicated that the jury concluded that the shooting occurred without malice, but under sudden excitement and heat of passion. We cannot say that the verdict is not amply supported by the evidence.

The defendant contends that it was error to give any instruction on the question of murder in the first degree for the reason that the evidence was not sufficient to justify a verdict of first degree murder.

■ We cannot agree. There was testimony of three witnesses that a short time before the shooting the defendant was heard to threaten the deceased. These witnesses were in or near the back yard of the home of deceased and heard the defendant say to him in a threatening manner, "I'm going to get you some time this day," or "I've got it in for you and I'm going to get you." There was also testimony that the

defendant, after disarming the deceased, pulled the pistol out of his pocket and shot him, showing previous possession of a deadly weapon. After the shooting the defendant made no effort to help or secure help for the deceased, but hurriedly left him in the field, though defendant had his automobile there and could have carried him to a doctor or hospital. This evidence was sufficient to sustain a verdict of first degree murder under the well established rule prevailing in this State and justified instructing the jury on that subject.

Error is also assigned to the giving of Instruction No. 2, which is as follows:

"The Court instructs the jury that every homicide in Virginia is presumed to be murder in the second degree. In order to elevate the homicide to murder in the first degree, the burden of proof is upon the Commonwealth, and in order to reduce the offense to manslaughter, or to justify or excuse it, the burden of proof is upon the accused. It is, however, the duty of the jury to consider all of the testimony, no matter by whom introduced, and ascertain therefrom if the accused is guilty or innocent, and if guilty, of what offense."

The objection to the instruction is that it imposes upon the defendant the burden of proving that he was not guilty of second degree murder, whereas he is required only to raise a reasonable doubt of such guilt in the minds of the jury. But the Court also gave Instruction A in these words:

"The Court instructs the jury that the law presumes every person charged with crime to be innocent until his guilt is established by the Commonwealth, beyond all reasonable doubt, and this presumption of innocence goes with the accused through the entire case, and applies at every stage thereof; and if, after having heard all of the evidence in the case, the jury have a reasonable doubt of the guilt of the accused upon the whole case, or as to any fact essential to prove the charge made against him in the indictment, it

is their duty to give the prisoner the benefit of the 'doubt, and find him not guilty."

The provision objected to in Instruction No. 2 has been approved repeatedly by our former decisions, some of which are reviewed in the opinion of Chief Justice Campbell in *Adams* v. *Commonwealth*, 163 Va. 1053, 178 S. E. 29. We think it was proper to give the Instruction under the circumstances of this case.

The judgment must be affirmed.

*Affirmed.*